IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JEROMY WILSON, | ) | CASE NO. 8:26-cv-13 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **BRIEF IN SUPPORT OF** |
| | ) | **MOTION TO DISMISS** |
| THE CITY OF OMAHA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**COME NOW** the Defendants in the above-styled action, City of Omaha, a municipal corporation; Matt Kuhse, City Attorney for the City of Omaha, in his official capacity; Kevin Slimp, City Prosecutor for the City of Omaha, in his official capacity; and Detective Jared Dostal, Omaha Police Department, in his individual and official capacities (collectively "Defendants"), and respectfully submit their Brief in Support of their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). In support thereof, the Defendants state to the Court:

### SUMMARY OF ARGUMENT

This action is grounded in allegations that the Plaintiff suffered injuries which allegedly resulted from (1) law enforcement's failure to sufficiently investigate Plaintiff's harassment claims and take corresponding enforcement action, and (2) the City of Omaha's ("City") refusal to prosecute said claims. (Doc. #1, ¶¶ 10, 15, 27). Specifically, the Complaint describes an ongoing, personal battle, primarily played out on social media, between Plaintiff and an individual named Brandon Taylor ("Taylor") regarding Plaintiff's status as a registered sex offender. (Doc. #1, ¶¶ 10, 19, 27). Plaintiff alleges there are currently two state court civil actions in Nebraska involving Taylor, CI 25-9195 and CI 25-8945, and a related federal case, 8:25-cv-635, involving another individual, Danesh Noshirvan ("Noshirvan"), whom Plaintiff alleges amplified the internet

1

harassment he has experienced as a result of Noshirvan's large social media following. (Doc. #1, ¶¶ 19, 30). In his Complaint, Plaintiff alleges the Defendants' failure to act in response to his reports to law enforcement regarding this feud has resulted in his inability to "provide stable care, maintain employment, and ensure his child's safety and emotional well-being." (Doc. #1, ¶ 29). However, Plaintiff provides zero factual support for his alleged injuries, and other than legal conclusions, no allegations are included in the Complaint linking Plaintiff's war with Taylor, and any related harm it has caused him, to the Defendants.

Plaintiff's Complaint includes five causes of action captioned as: Count I – 42 U.S.C. § 1983 (Monell – City of Omaha); Count II – First Amendment Retaliation; Count III – Fourteenth Amendment Equal Protection; Count IV – Individual Liability (Detective Dostal); and Count V – ADA / Rehabilitation Act. (Doc. #1, ¶¶ 31-35). However, each of Plaintiff's claims are devoid of factual support and all simply allege legal conclusions.

Defendants Matt Kuhse ("Kuhse") and Kevin Slimp ("Slimp"), both of which were sued in their official capacity, are attorneys employed by Defendant City of Omaha. The Complaint includes no allegations naming Kuhse, and Slimp is only mentioned briefly in the context of an abstract conversation he had with Plaintiff on December 8, 2025. (Doc. #1, ¶ 25). Because both Kuhse and Slimp are sued in their official capacity, the claims against them are merely redundant claims against the City and both defendants should be dismissed from this action. Irrespective of the fact Kuhse and Slimp should be dismissed for the foregoing reason, they would nevertheless be entitled to absolute immunity, or at minimum qualified immunity, because Plaintiff failed to state a plausible claim to relief against either.

Defendant Detective Jared Dostal ("Dostal") "is sued in his individual and official capacities." (Doc. #1, ¶ 6). Qualified immunity shields a police officer from liability for civil

damages if that officer's conduct does not violate clearly established constitutional rights of which a reasonable officer would have known. Additionally, when examining a police officer's assertion of qualified immunity against a claim for deliberate indifference related to police investigatory actions or a Fourteenth Amendment Equal Protection claim, the reviewing Court must consider whether the police officer's conduct "shocks the conscience," which requires proof that an officer intentionally or recklessly failed to investigate, not merely that they conducted a negligent or even grossly negligent investigation. Here, Plaintiff generally alleges that his "prior criminal history" influenced Dostal's decisions, but otherwise the Complaint falls well short of alleging Dostal violated a clearly established constitutional right, let alone acted in a way that shocks the conscious.

While the Complaint alleges a *Monell* claim against the City, in name at least, Plaintiff fails to identify a policy or describe a custom that is responsible for a deprivation of his constitutional rights. Conversely, there is an utter dearth of factual support in the Complaint outlining actions on the part of the City that resulted in Plaintiff's constitutional rights being violated. The alleged wrongful acts as pleaded by the Plaintiff boil down to a prosecutor using his professional judgment in deciding whether to file an information or not, and a police officer relying on his experience in deciding whether to investigate or pursue other enforcement actions. These facts do not detail any policy or custom that harmed Plaintiff and is unconstitutional on its face substantiating a *Monell* cause of action.

Plaintiff's claims are a classic example of a disgruntled complainant transforming his civil discord into resentment against government officials for refusing to acquiesce to his unwarranted demands. The Complaint is a shallow recitation of legal conclusions unsupported by the factual allegations necessary to plead cognizable causes of action and there is simply not enough before

3

this Court to survive a motion to dismiss. This shotgun approach to pleading, in conjunction with the dearth of relevant facts supporting Plaintiff's claims against the Defendants, is clearly in contrast with the requirements of Fed. R. Civ. P. 8(a)(2). Rather than addressing Plaintiff's claims on a count-by-count basis, the City Defendants respectfully suggest there are three reasons why none of the claims may proceed. Each is addressed below in the argument section.

For the reasons stated above, Plaintiff's claims are those for which relief cannot be granted and should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## STANDARDS OF REVIEW

### RULE 12(b)(6)

The Federal Rules of Civil Procedure permit the dismissal of a complaint or portions of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While Fed. R. Civ. P. 8(a)(2) only requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," it also "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A complaint that only alleges legal conclusions or "a formulaic recitation of the elements of a cause of action" does not meet this threshold standard, "nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 678, quoting *Bell Atlantic corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

A complaint must plead enough factual matter that, if taken as true, will "state a claim to relief that is plausible on its face." *Twombly* at 570. If the complaint fails to do so, it will not survive when confronted with a motion to dismiss. When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a reviewing court must apply a plausibility standard to the claims

alleged in the complaint. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief'" *Id*. at 678, quoting *Twombly* at 557. While the Court should accept factual allegations articulated in a complaint when considering a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. Of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

## QUALIFIED IMMUNITY

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.,* quoting *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).

"Because qualified immunity is 'an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial.' Indeed, we have

made clear that the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery.'" *Id. (internal citations omitted).*

Qualified immunity applies to police officers sued in their individual capacities. An officer, "will not be individually liable for an otherwise unlawful act if he is entitled to qualified immunity." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). There is a two-pronged analysis for a plaintiff to overcome qualified immunity. "To overcome the defense of qualified immunity the plaintiff must show: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Id.*, quoting *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Langford v. Norris*, 614 F.3d 445, 459 (8th Cir. 2010).

## *MONELL* LIABILITY

The Supreme Court in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), established that municipalities cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory, but may be held liable where official action is responsible for a deprivation of constitutional rights. To state a claim against a school district under a *Monell* theory, a plaintiff must establish: (1) a constitutional violation committed by a municipal employee, and (2) that the violation resulted from either an official municipal policy or an unofficial municipal custom. *See Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773 (8th Cir. 2001).

A policy is "an official policy, a deliberate choice or a guiding principle or procedure made by an official with authority," while a custom is a "persistent, widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate

indifference or tacit authorization." *Id.* Although "'an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business' ... '[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'" *Davison v. City of Minneapolis*, 490 F.3d 648, 659 (8th Cir. 2007) (citations omitted) (plurality opinion).

## ARGUMENT

### I. ALL OFFICIAL CAPACITY CLAIMS AGAINST DEFENDANTS KUHSE, SLIMP, AND DOSTAL ARE REDUNDANT AND SHOULD BE DISMISSED.

The Plaintiff named Defendants Kuhse and Slimp in their "official capacity only," and Defendant Dostal "in his individual and official capacities." (Doc. #1, ¶¶ 4, 5, 6). Because the City of Omaha is a party to this action, all official capacity claims brought by the Plaintiff against Kuhse, Slimp, and Dostal are redundant and must be dismissed. Official capacity claims are "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Where the entity is named as a defendant, an official capacity claim is redundant. *Foster v. Michigan*, 573 F. App'x 377, 389-90 (6th Cir. 2014).

The 8th Circuit has adopted this reasoning on numerous occasions. In *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010), the Court found that a plaintiff's 42 U.S.C. § 1983 claim against a city police officer in his official capacity was properly dismissed as redundant of the plaintiff's same claim against the city. *See also Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) (Finding that the district court correctly dismissed a 42 U.S.C. § 1983 claim against school district employee redundant to the claim against the School District); *Roberts v. Dillon*, 15 F.3d 113, 115 (8th Cir. 1994) (When plaintiff sued

sheriff in his official capacity she sued the County as well – any naming of the County in the heading of the complaint was, therefore, redundant). Additionally, the United States District Court for the District of Nebraska dismissed plaintiffs' claims against the Westside Community School District's Superintendent in his official capacity. *See Parsons v. McCann*, 138 F. Supp. 3d 1086 (D. Neb. 2015). In doing so, Judge Kopf reasoned that "[b]ecause Plaintiffs' claims against [the Superintendent] in his official capacity are in reality claims against the school district for which he works, all claims against [the Superintendent] in his official capacity shall be dismissed as redundant of Plaintiffs' claims against Westside Community Schools." *Parsons v. McCann*, 138 F. Supp. 3d at 1113.

All of the Plaintiff's claims asserted against Kuhse, Slimp, and Dostal in their official capacities are also asserted against the City in this case and are therefore redundant. Because these claims are in essence claims against the City, and Defendants Kuhse and Slimp are only named in their official capacity, they should be dismissed from this action without further consideration. All claims against Dostal in his official capacity must be dismissed and claims against him in his individual capacity will be addressed below.

      **II.**      **THE PLAINTIFF FAILS TO PLEAD FACTS SUFFICIENT TO STATE A CLAIM IMPOSING LIABILITY ON THE CITY.**

The Plaintiff attempts to bring numerous claims against Defendant City of Omaha. However, the ability to prosecute a *Monell* claim against the City is limited. "A municipality cannot be held liable under § 1983 solely because it employs a tortfeasor, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978): Liability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 985 (8th Cir. 2016).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949, 173 L. Ed. 2d 868. Interpreted liberally, the closest the Plaintiff comes to making an allegation remotely sounding in a *Monell* claim is in his conclusory statement stating, "The City maintained policies and customs resulting in a failure to enforce Nebraska harassment and stalking statutes despite notice and probable cause." (Doc. #1, ¶ 31).  However, the Complaint contains no reference to an official City policy, or any policy for that matter. Nor does the Plaintiff allege facts identifying or describing a custom. The Plaintiff's sole reference to City policies and customs in the Complaint, identified above,  is clearly a "naked assertion" without any factual basis and the type of pleading the court in *Iqbal* determined to be insufficient in presenting a *Monell* claim. This allegation is utterly devoid of further factual enhancement.  As such, the Plaintiff's Complaint is deficient under Fed. R. Civ. P. 8 and fails to state a claim under which relief can be granted.

Factual content must infer that a City policy or custom caused the constitutional losses at issue. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). The terms "policy" and "custom" (or practice) are not interchangeable, either. *Id*. A policy is "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters. *Id*. (citing Ware v. Jackson County, 150 F.3d 873, 880 (8th Cir. 1998)). A constitutionally culpable custom (also referred to as a practice) requires even more. Facts must reasonably infer (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by City of Omaha employees; (2) deliberate indifference to or tacit authorization of such conduct by the City of Omaha's policymaking officials after notice to the officials of that misconduct; and (3) that the City of Omaha's custom was the moving force behind

the claimed constitutional violations. *Id*. (citing Ware). Plaintiff never describes an actual policy directing unconstitutional behavior. Nor are there facts inferring that Plaintiffs' experiences were part of a continuing, widespread pattern of similar behavior among City of Omaha employees.

If there was such a widespread policy, practice, or custom, it would surely be known to the Plaintiff such that he could plead it with sufficient facts, even generally. And if there was such a widespread policy, practice, or custom, there would be more injuries to people based on claims of failure to investigate or prosecute, but Plaintiff points to none.

Rather, Plaintiff includes only one conclusory statement in the entire Complaint suggesting that the City, through the City Prosecutor's Office and Omaha Police Department, maintained policies and customs resulting in a failure to enforce harassment and stalking statutes. (Doc. #1, ¶ 31). Even putting aside the lack of factual support in Plaintiff's Complaint related to his *Monell* claim, he simultaneously presents contradictory allegations in which he admits that (1) the police department took numerous reports from him regarding the harassment allegations, (2) City Prosecutor Kevin Slimp spoke with him directly regarding his complaints, and (3) the Omaha Police Department issued a criminal citation in response to Plaintiff's reports to law enforcement. (Doc. #1, ¶¶ 11, 25, 26). These actions demonstrate that the Defendants were actively engaged in their law enforcement and prosecutorial functions, and using their professional discretion in making decisions. There are no facts pled suggesting the existence of an official policy or widespread custom that caused a violation of Plaintiff's constitutional rights. This undermines Plaintiff's *Monell* argument alleging the City refused law enforcement services, and declined prosecution of Plaintiff's harassment complaints, because of a policy or custom.

In short, the Complaint falls well short of presenting a viable *Monell* claim against the City because the Plaintiff has alleged none of the necessary elements to support this cause of action.

Furthermore, "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973). "The Supreme Court's prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." Id. citing *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971); Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 551, 7 L.Ed.2d 512 (1962); *Poe v. Ullman*, 367 U.S. 497, 501, 81 S.Ct. 1752, 1754, 6 L.Ed.2d 989 (1961). So irrespective of the Plaintiff's pleading deficiencies regarding his *Monell* claim, he lacks standing to contest prosecution policies based on the facts as alleged. For this reason, and the other reasons mentioned above, any claims against the City of Omaha should be dismissed for failure to state a claim upon which relief can be granted.

### III. DEFENDANT DOSTAL IS ENTITLED TO QUALIFIED IMMUNITY AND ALL CLAIMS AGAINST HIM MUST BE DISMISSED.

Plaintiff alleges generally, but without sufficient factual support, that "OPD officers, including Detective Dostal, failed to take meaningful enforcement action" regarding the complaints he lodged with the Omaha Police Department. (Doc. #1, ¶ 15). Plaintiff further alleges that "Detective Dostal . . . in a recorded conversation with the accused, indicated that Plaintiff's prior criminal history influenced enforcement decisions rather than statutory criteria." (Doc. #1, ¶ 23). Yet, nowhere in the Complaint does Plaintiff explain what injuries and damages he has actually suffered other than generally alleging that, "Defendants' failure to act placed Plaintiff and his minor child at continued risk . . . and the ongoing harassment and litigation have substantially interfered with Plaintiff's ability to provide stable care, maintain employment, and ensure his child's safety and emotional well-being." (Doc. #1, ¶ 29). The Complaint lacks specificity and the

necessary factual support to round out the conclusory allegations presented in support of Plaintiff's claims against Dostal.

Qualified immunity shields Dostal from individual liability under § 1983 as long as he did not violate a clearly established constitutional right of which a reasonable person would have known. See, e.g., *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *D.C v. Wesby*, 583 U.S. 48, 63, 138 S.Ct. 577 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986)). To overcome qualified immunity, Dostal's conduct must not only have deprived Plaintiff of a constitutional right, but existing precedent must have placed the constitutional question beyond debate, such that Dostal was knowingly violating the law. *Wesby* at *id*. See also *Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013) (The plaintiff bears the burden of proving that the constitutional rights a defendant is accused of violating were clearly established). Clearly established law should not be defined at a high level of generality, but rather "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79, 137 S. Ct. 548, 552 (2017) (internal quotations omitted). The test is whether the "right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela v. Hughes*, 584 U.S. 100, 105, 138 S. Ct. 1148, 1153 (2018) (quoting Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014)).

The only fact-specific allegation identifying Dostal by name in the Complaint states that he had a conversation with a third-party regarding his decision-making process as it related to the investigation of Plaintiff's claims. This does not come close to providing the factual support necessary to overcome the defense of qualified immunity. The Complaint is devoid of any allegation identifying a clearly establish constitutional right that Dostal violated in partaking in

this alleged conversation. Nor does the Plaintiff point to an action Dostal took that he should have reasonably known was unconstitutional. Plaintiff has failed to allege either prong of the test necessary to overcome qualified immunity.

Because the Plaintiff has failed to allege facts supporting any of his claims against Dostal and Dostal has qualified immunity, Plaintiff's 42 U.S.C. § 1983 claims against Dostal in his individual capacity should be dismissed with prejudice.

### A. The Plaintiff failed to allege a plausible § 1983 claim and Dostal is entitled to qualified immunity.

Plaintiff's core grievance and the basis from which he seeks damages is that the Defendants did not adequately investigate, enforce and prosecute the harassment complaints he submitted to the Omaha Police Department. (Doc. #1, ¶ 21). As a result of these alleged omissions by Defendants, Plaintiff claims to have suffered injuries. *Id.* at ¶ 29. Liberally construed and restated, the Plaintiff alleges that Dostal violated his Fourteenth Amendment rights based on failure to protect resulting from state-created danger.

"[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 198, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id* at 1004. However, the "state-created danger" exception to this rule may apply when "the state affirmatively puts a person in a position of danger that the person would not otherwise have been in but for the state's intervention." *Sophapmysay v. City of Sergeant Bluff,*

126 F.Supp.2d 1180, 1194 (2000). See *S.S. ex rel. Jervis v. McMullen*, 225 F.3d 960, 962 (8th Cir.2000).

Under the state-created danger theory, the Plaintiff must prove (1) he was a member of a limited, precisely definable group; (2) Dostal's conduct put the Plaintiff at significant risk of serious, immediate, and proximate harm; (3) the risk was obvious or known to Dostal; (4) Dostal acted recklessly in conscious disregard of the risk; and (5) in total, Dostal's conduct shocks the conscience. *Avalos v. City of Glenwood*, 382 F.3d 792, 798 (8th Cir.2004). As with all of the other claims in the Complaint, Plaintiff's allegations related to Dostal declining to investigate his social media harassment are wholly insufficient in demonstrating any of the five requirements necessary to state a claim. In fact, Plaintiff failed to allege any constitutional wrongdoing at all in the Complaint. Moreover, it is alleged that Plaintiff is at risk and there exist safety concerns related to the alleged failure to protect, but Plaintiff pleads no facts describing what danger he is in because of Defendants "failure to act." Nor are there any other allegations contained in the Complaint asserting definable injuries.

Additionally, Dostal asserts that qualified immunity shields him from personal liability for this claim, and all others alleged by Plaintiff, because Plaintiff has failed to plead a clearly established constitutional right was violated of which Dostal should have reasonably known. As stated above, when qualified immunity is asserted by a government official, the relevant question becomes an objective, fact-specific inquiry into the information the officer possessed and whether a reasonable officer could believe that the conduct alleged was lawful in light of clearly established law. *Anderson v. Creighton,* 483 U.S. 635, 641 (1987). Even if Plaintiff was able to demonstrate all of the requirements necessary to substantiate a failure to protect claim, which he has not, when qualified immunity is raised in the context of a such a claim based on the "state-created danger"

14

exception under the Fourteenth Amendment, the Eighth Circuit Court of Appeals has held that the Plaintiff must demonstrate that Dostal reasonably should have known he was violating the Plaintiff's constitutional rights. Again, nothing in the Complaint comes close to alleging the facts necessary to overcome Dostal's qualified immunity and Plaintiff's Fourteenth Amendment claim for failure to protect.

The remaining causes of action included in the Complaint are "First Amendment Retaliation," "Fourteenth Amendment Equal Protection," and an "ADA / Rehabilitation Act" claim alleging denial of public safety services. (Doc. #1, ¶¶ 32, 33, 35). Plaintiff has failed to allege any facts identifying protected speech and petitioning activities he sought and was denied. Similarly, he pleads no facts articulating an equal protection claim arising out of selective non-enforcement. Lastly, the Complaint includes no allegation demonstrating the existence of an "ADA / Rehabilitation Act" claim. As such, the Defendants are unable to respond to these causes of action that were for all intents and purposes simply included in the Complaint as headings with no factual support.

Accordingly, any claims against the Defendants based on the aforementioned constitutional violations should be dismissed for failure to state a claim upon which relief can be granted and because Kuhse, Slimp, and Dostal have qualified immunity.

## **CONCLUSION**

For the aforementioned reasons, the Defendants respectfully request the Court dismiss all claims against the Defendants with prejudice.

**DATED** this 4th day of March, 2026.

                                               CITY OF OMAHA, et al., Defendants.

                                               /s/ *David J. Grauman*
                                               DAVID J. GRAUMAN, No. 25646
                                               Assistant City Attorney
                                               1819 Farnam Street, Suite 804
                                               Omaha, NE 68183
                                               (402) 444-5115
                                               david.grauman@cityofomaha.org
                                               Attorney for the Defendants


**CERTIFICATE OF COMPLIANCE**

      Pursuant to NECivR 7.1(d)(3), I hereby certify that this brief complies with the word count limitation provided under the rule and further certify that this document was prepared using Microsoft Word 2019, and the word count function was applied to include all text, including the caption, headings, footnotes and quotations.  This document contains 4859 words.

                                                         /s/ *David J. Grauman*


**CERTIFICATE OF SERVICE**

      I hereby certify that on the 4th day of March, 2026, I filed the foregoing **BRIEF IN SUPPORT OF MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which is to send notification of such filing to all attorneys of record and pro se litigants registered with CM/ECF system. Additionally, a copy was emailed to the Plaintiff at the address listed below:

Jeromy Wilson
4213 Corby Street
Omaha, NE 68111
Ph.: 402.415.9016
Email: djjiik2015@gmail.com

                                                         /s/ *David J. Grauman*