**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| JEROMY WILSON, | ) | CASE NO. 8:26-cv-13 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **BRIEF IN SUPPORT OF** |
| | ) | **MOTION TO DISMISS** |
| THE CITY OF OMAHA, *et al.*, | ) | **AMENDED COMPLAINT** |
| | ) | |
| Defendants. | ) | |

**COME NOW** the Defendants in the above-styled action, City of Omaha, a municipal corporation; Matt Kuhse, City Attorney for the City of Omaha, in his official capacity; Kevin Slimp, City Prosecutor for the City of Omaha, in his official capacity; and Detective Jared Dostal, Omaha Police Department, in his individual and official capacities (collectively "Defendants"), and respectfully submit their Brief in Support of their Motion to Dismiss Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  In support thereof, the Defendants state to the Court:

<u>**SUMMARY OF ARGUMENT**</u>

Plaintiff's First Amended Complaint (Doc. #38) fails to present any new, additional allegations supporting his claims and the prior arguments raised by Defendants in their Brief in Support of Motion to Dismiss (Doc. #15) and Reply Brief in Support of Motion to Dismiss (Doc. #25) support dismissal of the Amended Complaint. Defendants incorporate these documents by reference, but will identify the allegations included in the Amended Complaint that were not in the original Complaint (Doc. #1) and explain why Plaintiff's claims remain insufficient.

Defendants respectfully point the Court to the "Summary of Argument" section included in Doc. #15 which outlines the basis of the grounds for dismissal. As with the original Complaint, the Amended Complaint is wrought with legal conclusions and devoid of any relevant factual

1

support for the numerous claims presented in the pleading related to his allegations that he was subjected to selective non-enforcement regarding his harassment complaints because of his status as a registered sex offender. Plaintiff does include additional allegations in the amendment, yet the legal conclusions and timeline recitation that differentiate the Amended Complaint from the original pleading are nothing more than a chronology of the Plaintiff's serial police report filings and his continued personal squabbles with other internet characters since the initiation of this suit. The amendment fails to meet the pleading requirements of Fed. R. Civ. P. 8(a)(2) as Plaintiff does not articulate any cognizable claim under federal law, therefore, this action should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## STANDARDS OF REVIEW

### RULE 12(b)(6)

The Federal Rules of Civil Procedure permit the dismissal of a complaint or portions of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While Fed. R. Civ. P. 8(a)(2) only requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," it also "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A complaint that only alleges legal conclusions or "a formulaic recitation of the elements of a cause of action" does not meet this threshold standard, "nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 678, quoting *Bell Atlantic corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

A complaint must plead enough factual matter that, if taken as true, will "state a claim to relief that is plausible on its face." *Twombly* at 570. If the complaint fails to do so, it will not

survive when confronted with a motion to dismiss. When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a reviewing court must apply a plausibility standard to the claims alleged in the complaint. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief'" *Id*. at 678, quoting *Twombly* at 557. While the Court should accept factual allegations articulated in a complaint when considering a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. Of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

## QUALIFIED IMMUNITY

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.,* quoting *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).

3

"Because qualified immunity is 'an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial.' Indeed, we have made clear that the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that ''insubstantial claims' against government officials [will] be resolved prior to discovery.'" *Id. (internal citations omitted).*

Qualified immunity applies to police officers sued in their individual capacities. An officer, "will not be individually liable for an otherwise unlawful act if he is entitled to qualified immunity." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). There is a two-pronged analysis for a plaintiff to overcome qualified immunity. "To overcome the defense of qualified immunity the plaintiff must show: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Id.*, quoting *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Langford v. Norris*, 614 F.3d 445, 459 (8th Cir. 2010).

### *MONELL* LIABILITY

The Supreme Court in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), established that municipalities cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory, but may be held liable where official action is responsible for a deprivation of constitutional rights. To state a claim against a school district under a *Monell* theory, a plaintiff must establish: (1) a constitutional violation committed by a municipal employee, and (2) that the violation resulted from either an official municipal policy or an unofficial municipal custom. *See Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773 (8th Cir. 2001).

4

A policy is "an official policy, a deliberate choice or a guiding principle or procedure made by an official with authority," while a custom is a "persistent, widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate indifference or tacit authorization." *Id.* Although "'an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business' ... '[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'" *Davison v. City of Minneapolis*, 490 F.3d 648, 659 (8th Cir. 2007) (citations omitted) (plurality opinion).

## ARGUMENT

### I. ALL OFFICIAL CAPACITY CLAIMS AGAINST DEFENDANTS KUHSE, SLIMP, AND DOSTAL ARE REDUNDANT AND SHOULD BE DISMISSED.

The Plaintiff named Defendants Kuhse and Slimp in their "official capacity only," and Defendant Dostal "in his individual and official capacities." (Doc. #38, ¶¶ 6-8). Because the City of Omaha is a party to this action, all official capacity claims brought by the Plaintiff against Kuhse, Slimp, and Dostal are redundant and must be dismissed. Official capacity claims are "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Where the entity is named as a defendant, an official capacity claim is redundant. *Foster v. Michigan*, 573 F. App'x 377, 389-90 (6th Cir. 2014).

The 8th Circuit has adopted this reasoning on numerous occasions. In *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010), the Court found that a plaintiff's 42 U.S.C. § 1983 claim against a city police officer in his official capacity was properly dismissed as redundant of the plaintiff's same claim against the city. *See also Artis v. Francis Howell N. Band*

5

*Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) (Finding that the district court correctly dismissed a 42 U.S.C. § 1983 claim against school district employee redundant to the claim against the School District); *Roberts v. Dillon*, 15 F.3d 113, 115 (8th Cir. 1994) (When plaintiff sued sheriff in his official capacity she sued the County as well – any naming of the County in the heading of the complaint was, therefore, redundant). Additionally, the United States District Court for the District of Nebraska dismissed plaintiffs' claims against the Westside Community School District's Superintendent in his official capacity. *See Parsons v. McCann*, 138 F. Supp. 3d 1086 (D. Neb. 2015).  In doing so, Judge Kopf reasoned that "[b]ecause Plaintiffs' claims against [the Superintendent] in his official capacity are in reality claims against the school district for which he works, all claims against [the Superintendent] in his official capacity shall be dismissed as redundant of Plaintiffs' claims against Westside Community Schools." *Parsons v. McCann*, 138 F. Supp. 3d at 1113.

All of the Plaintiff's claims asserted against Kuhse, Slimp, and Dostal in their official capacities are also asserted against the City in this case and are therefore redundant. Because these claims are in essence claims against the City, and Defendants Kuhse and Slimp are only named in their official capacity, they should be dismissed from this action with prejudice without further consideration. All claims against Dostal in his official capacity must be dismissed and claims against him in his individual capacity will be addressed below.

## II. THE PLAINTIFF FAILS TO PLEAD FACTS SUFFICIENT TO STATE A CLAIM IMPOSING LIABILITY ON THE CITY.

The Plaintiff attempts to bring numerous claims against Defendant City of Omaha. However, the ability to prosecute a *Monell* claim against the City is limited.  "A municipality cannot be held liable under § 1983 solely because it employs a tortfeasor, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978): Liability for a constitutional

violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 985 (8th Cir. 2016).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949, 173 L. Ed. 2d 868. Interpreted liberally, the closest Plaintiff comes to including allegations remotely sounding in a *Monell* claim are his conclusory statements contained in Count I – 42 U.S.C. § 1983 of the Amended Complaint. (Doc. #38, ¶¶ 52-55).  However, the Complaint contains no reference to an official City policy that is unconstitutional on its face, or as applied results in an unconstitutional outcome. Nor does the Plaintiff allege facts identifying or describing a widespread custom or practice. Rather Plaintiff suggests that his own personal experiences and discontent with the results of his complaints to the police department establish a policy and/or custom that is unconstitutional. This is insufficient.

Furthermore, Plaintiff constantly flips between diametrically opposed positions by arguing on the one hand that the City lacks sufficient policies or has unconstitutional customs and practices, while at the same time alleging that Defendant Dostal failed to follow the existing policies that would have ensured Plaintiff's claims were properly handled. (Doc. #38, ¶¶ 54, 64(d-f)). Plaintiff admits the City maintains various policies including those "mandating impartial investigation, mandatory enforcement of harassment and stalking statutes, mandatory bias notification to prosecuting offices, and thorough documentation and follow-up." *Id*. Plaintiff also argues conflicting positions regarding the City's training of Dostal. Plaintiff, again, admits that the City performed the necessary training in stating, "Dostal's violations of OPD's own mandatory written

7

policies - policies he was trained on and bound by - defeat any claim that his conduct reflected reasonable professional judgment." (Doc. #38, ¶ 65). However, earlier in the Amended Complaint, Wilson alleges that Dostal's failure to follow policy "constitutes direct evidence of a failure to train or supervise that amounts to deliberate indifference, satisfying Monell liability." (Doc. #38, ¶ 54). So to argue a *Monell* claim against the City, considering the Plaintiff's own admissions and contradictions, is disingenuous. Plaintiff's *Monell* claims in the Amended Complaint are clearly "naked assertions" without any factual basis and the type of pleading the court in *Iqbal* determined to be insufficient in presenting a *Monell* claim. As such, Plaintiff's Complaint is deficient under Fed. R. Civ. P. 8 and fails to state a claim under which relief can be granted.

Factual content must infer that a City policy or custom caused the constitutional losses at issue. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). The terms "policy" and "custom" (or practice) are not interchangeable, either. *Id*. A policy is "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters. *Id*. (citing *Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998)). A constitutionally culpable custom (also referred to as a practice) requires even more. Facts must reasonably infer (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by City of Omaha employees; (2) deliberate indifference to or tacit authorization of such conduct by the City of Omaha's policymaking officials after notice to the officials of that misconduct; and (3) that the City of Omaha's custom was the moving force behind the claimed constitutional violations. *Id*. (citing *Ware*). Plaintiff never describes an actual policy directing unconstitutional behavior and in fact admits the City has various policies specifically addressing the unconstitutional conduct he claims to have been subjected to. Nor are there facts inferring that Plaintiff's experiences were part of a continuing, widespread pattern of similar

8

behavior among City of Omaha employees.

When a plaintiff's only allegations related to a *Monell* claim are his own personal experience, it is patently insufficient to infer a "pattern." *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013). In *Ulrich*, the Court held that the plaintiff's own arrest and detention cannot alone establish an unconstitutional policy or custom. Here, this is precisely what the Plaintiff is attempting to do in his Amended Complaint. He provides no allegations identifying a pattern of conduct by City officials impacting an individual other than himself, and the facts pleaded in the Amended Complaint all relate to Plaintiff's perception of what should have occurred following his numerous complaints to the Omaha Police Department. (Doc. #38, ¶ 55). If there was such a widespread policy, practice, or custom, it would surely be known to the Plaintiff such that he could plead it with sufficient facts, even generally. And if there was such a widespread policy, practice, or custom, there would be more injuries to people based on claims of selective non-enforcement, but Plaintiff points to none.

Rather, Plaintiff includes only conclusory and contradictory statements in the Amended Complaint suggesting that the City, through the City Prosecutor's Office and Omaha Police Department, maintained policies and customs resulting in a failure to enforce harassment and stalking statutes. "The City of Omaha maintained policies, customs, and practices resulting in the systematic failure to enforce Nebraska harassment, stalking, and cyberstalking statutes despite actual notice and documented probable cause. This policy of non-enforcement was the moving force behind the constitutional violations suffered by Plaintiff." (Doc. #38, ¶ 52). Even putting aside the lack of factual support in Plaintiff's Amended Complaint related to his *Monell* claims, he simultaneously presents contradictory allegations in which he admits that (1) the police department took numerous reports from him regarding the harassment allegations, (2) City

9

Prosecutor Kevin Slimp spoke with him directly regarding his complaints, and (3) the Omaha Police Department issued a criminal citation in response to Plaintiff's reports to law enforcement. (Doc. #38, ¶¶ 1, 33, 35). These actions demonstrate that Defendants were actively engaged in their law enforcement and prosecutorial functions, and using their professional discretion in making decisions. There are no allegations in the Amended Complaint suggesting the existence of an official policy or widespread custom that caused a violation of Plaintiff's constitutional rights. This undermines Plaintiff's *Monell* argument alleging the City refused law enforcement services, and declined prosecution of Plaintiff's harassment complaints, because of a policy or custom.

Lastly, but most importantly, "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973). "The Supreme Court's prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Id*. citing *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971); Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 551, 7 L.Ed.2d 512 (1962); *Poe v. Ullman*, 367 U.S. 497, 501, 81 S.Ct. 1752, 1754, 6 L.Ed.2d 989 (1961). So irrespective of the Plaintiff's pleading deficiencies regarding his *Monell* claims, he lacks standing to contest prosecution policies based on the facts as alleged.

In short, the Complaint falls well short of presenting any viable *Monell* claim against the City because the Plaintiff has alleged none of the necessary elements to support this cause of action.  For the reasons mentioned above, any claims against the City of Omaha should be dismissed for failure to state a claim upon which relief can be granted.

### III.     DEFENDANT DOSTAL IS ENTITLED TO QUALIFIED IMMUNITY AND ALL CLAIMS AGAINST HIM MUST BE DISMISSED.

Plaintiff alleges generally, but without sufficient factual support, that OPD and more specifically Detective Dostal, failed to take "meaningful enforcement action" regarding the complaints he lodged with the Omaha Police Department. (Doc. #38, ¶¶ 12, 16, 45, 47, 48). Plaintiff further alleges that Detective Dostal exhibited bias and deliberate indifference to Wilson's complaints because of Wilson's status as a convicted sex offender evidenced by a recorded conversation with the subject of Wilson's complaints, Brandon Taylor. (Doc. #38, ¶ 28). However, the Amended Complaint lacks specificity and the necessary facts to support the conclusory allegations that permeate the claims against Dostal, and as with the *Monell* allegations, Plaintiff contradicts himself throughout the pleading on this issue.

Qualified immunity shields Dostal from individual liability under § 1983 as long as he did not violate a clearly established constitutional right of which a reasonable person would have known. See, e.g., *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *D.C v. Wesby*, 583 U.S. 48, 63, 138 S.Ct. 577 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986)). To overcome qualified immunity, Dostal's conduct must not only have deprived Plaintiff of a constitutional right, but existing precedent must have placed the constitutional question beyond debate, such that Dostal was knowingly violating the law. *Wesby* at *id*. See also *Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013) (The plaintiff bears the burden of proving that the constitutional rights a defendant is accused of violating were clearly established). Clearly established law should not be defined at a high level of generality, but rather "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79, 137 S. Ct. 548, 552 (2017) (internal quotations omitted). The test is whether the "right's contours were sufficiently definite that any reasonable official in the defendant's shoes

11

would have understood that he was violating it." *Kisela v. Hughes*, 584 U.S. 100, 105, 138 S. Ct. 1148, 1153 (2018) (quoting Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014)).

The only fact-specific allegation implicating Dostal in the Amended Complaint suggests that he had a conversation with a third-party – Brandon Taylor - regarding his decision-making process as it related to the investigation of Plaintiff's harassment complaints. This does not come close to providing the factual support necessary to overcome the defense of qualified immunity. The Amended Complaint is devoid of any allegation identifying a clearly establish constitutional right that Dostal violated in partaking in this conversation with Taylor. Nor does the Plaintiff point to an action Dostal took that he should have reasonably known was unconstitutional. The assertion that Dostal let bias interfere with, let alone govern, his investigation of Wilson's complaints based on Dostal opining that an investigation regarding an online, social media feud was petty, is a remarkable stretch. And is wholly insufficient in overcoming qualified immunity. Consequently, Plaintiff has failed to allege either prong of the test necessary to overcome qualified immunity.

Because the Plaintiff has failed to allege facts supporting any of his claims against Dostal and Dostal has qualified immunity, Plaintiff's 42 U.S.C. § 1983 claims against Dostal in his individual capacity should be dismissed with prejudice.

**A. Plaintiff failed to allege a plausible § 1983 claim under the Fourteenth Amendment and Dostal is entitled to qualified immunity.**

Plaintiff's core grievance and the basis from which he seeks damages is that the Defendants did not adequately investigate, enforce and prosecute the harassment complaints he submitted to the Omaha Police Department. (Doc. #38, ¶¶ 51-69). As a result of these alleged omissions by Defendants, Plaintiff claims to have suffered injuries resulting in damages in excess of $75,000,000.00. (*Id.* at ¶¶ 70-72). Liberally construed and restated, the Plaintiff alleges that Dostal

violated his Fourteenth Amendment Equal Protection rights based on selective enforcement - here non-enforcement - of his harassment complaints because of his status as a convicted sex offender.

"[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 198, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id* at 1004. Here, Plaintiff repeatedly alleges that the lack of meaningful law enforcement action by Dostal was deliberately done with the intent to treat him differently because he is a convicted criminal. And that in turn put him in danger of violence (even though Plaintiff provides no facts indicating he has ever been physically harmed) which is the basis of his selective non-enforcement claims. Because being a sex offender is not a suspect class, Plaintiff must satisfy the rationale basis test to prove his § 1983 claim against Dostal.

The Eighth Circuit has opined that, "[w]hen no fundamental right or suspect class is at issue, a challenged law [or action] must pass the rational basis test." *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 996 (8th Cir. 2016). Therefore, the test to determine whether Wilson's equal protection rights have been violated in this case requires him to "prove he was treated differently by the government than similarly situated persons and the different treatment was not rationally related to a legitimate government objective." *Koscielski v. City of Minneapolis*, 435 F.3d 898, 901 (8th Cir. 2006).

Here, the Court does not need to consider the second prong of the test because Plaintiff has failed to include any allegations in the Amended Complaint identifying similarly situated persons – or any other persons for that matter – and has not met the first prong. The Eighth Circuit Court

13

of Appeals has instructed that "[t]o be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir.2015). In employment discrimination cases, the Eighth Circuit has repeatedly identified "similarly situated" persons as those engaged in "similar misconduct." *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 811 (8th Cir. 2005). While there is a lack of jurisprudence on analogous claims to the one at bar - a convicted felon alleging selective non-enforcement by police related to his social media harassment complaints - the cases above do make clear that a plaintiff must identify similarly situated individuals and clearly articulate how said individuals were treated differently. As with Plaintiff's failure to plead a custom or pattern for *Monell* purposes, he also neglects to include the necessary facts to support a Fourteenth Amendment Equal Protection claim.

Dostal asserts that qualified immunity shields him from personal liability for this equal protection claim, and all other claims alleged by Plaintiff against him, because Plaintiff has failed to plead a clearly established constitutional right was violated of which Dostal should have reasonably known. As stated above, when qualified immunity is asserted by a government official, the relevant question becomes an objective, fact-specific inquiry into the information the officer possessed and whether a reasonable officer could believe that the conduct alleged was lawful in light of clearly established law. *Anderson v. Creighton,* 483 U.S. 635, 641 (1987). Even if Plaintiff was able to demonstrate all of the requirements necessary to substantiate an equal protection claim for selective non-enforcement, which he has not, when qualified immunity is raised in the context of a such a claim under the Fourteenth Amendment, the Eighth Circuit Court of Appeals has held that the Plaintiff must demonstrate that Dostal reasonably should have known he was violating the Plaintiff's constitutional rights. Again, nothing in the Amended Complaint comes close to alleging

14

the facts necessary to overcome Dostal's qualified immunity, and regardless Plaintiff's Fourteenth Amendment Equal Protection Claim should be dismissed with prejudice for failure to state a claim.

The remaining causes of action included in the Complaint are "First Amendment Retaliation," and "Title II ADA and Section 504 Rehabilitation Act" claims. (Doc. #38, ¶¶ 56-59, 66-69). Plaintiff has failed to allege any facts identifying protected speech and petitioning activities he sought and was denied. Nor does he adequately link denial of his First Amendments rights to Dostal. Similarly, the Amended Complaint includes no facts demonstrating the existence of an "ADA / Rehabilitation Act" claim, and regardless, he cannot allege such a claim here as a citizen has no right to compel law enforcement investigations or prosecutions. As such, Dostal will not respond further to these causes of action that were for all intents and purposes simply included in the Amended Complaint as a "kitchen sink" approach to pleading which is clearly in contrast with the requirements of Fed. R. Civ. P. 8(a)(2).

Accordingly, any claims against the Defendants based on the aforementioned constitutional violations should be dismissed for failure to state a claim upon which relief can be granted and because Kuhse, Slimp, and Dostal have qualified immunity.

## IV. RECORDS THIS COURT MAY CONSIDER AT THIS STAGE DEMONSTRATE WILSON MISREPRESENTED THE CONVERSATION DOSTAL HAD WITH TAYLOR.

At this stage, the Court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned without converting the motion into one for summary judgment." *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)). Recordings of an incident are

15

necessarily embraced by the pleadings and properly considered at this stage. *Ching as Trustee for Jordan v. City of Minneapolis*, 73 F.4th 617, 620-21 (8th Cir. 2023). This Court is not obligated to accept Plaintiff's version of events when it is blatantly contradicted by the record. *Id*. Even viewed most favorably to Plaintiff, the audio recording of Dostal's conversation with Brandon Taylor ("Taylor"), cited to numerous times and relied upon by Plaintiff in the Amended Complaint, does exactly that and exposes Plaintiff's misrepresentations to this Court. In the Amended Complaint Wilson concludes Dostal's partiality and bias is evidenced in this conversation, but the recording shows Wilson drastically contorts the conversation to fit his false narrative.

The recording demonstrates that Dostal was explaining the ongoing investigation to Taylor and advising him that the results would be referred to the prosecutor for a final decision. Dostal tells Taylor that following conclusion of the investigation, the police will "tell a county prosecutor hey is this harassment or not." Index, Exhibit A, Exhibit 1 Dostal Recording at 0:43. Later in the conversation Dostal reiterates to Taylor the decision to prosecute will be the attorneys in stating, "so we have to obviously investigate it but I just wanted to get your side of the story." Index, Exhibit A, Exhibit 1 Dostal Recording at 1:23-1:26. Other than Dostal opining that the online spat between Wilson and Taylor is "petty," the recording clearly demonstrates Wilson is misrepresenting the interaction Dostal had with Taylor. And the recording serves to undermine rather than support Plaintiff's claims of Dostal's non-enforcement and bias.

## CONCLUSION

For the aforementioned reasons, the Defendants respectfully request the Court dismiss all claims against the Defendants with prejudice.

**DATED** this 6th day of May, 2026.

CITY OF OMAHA, et al., Defendants.

/s/ *David J. Grauman*
DAVID J. GRAUMAN, No. 25646
Assistant City Attorney
1819 Farnam Street, Suite 804
Omaha, NE 68183
(402) 444-5115
david.grauman@cityofomaha.org
Attorney for the Defendants

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d)(3), I hereby certify that this brief complies with the word count limitation provided under the rule and further certify that this document was prepared using Microsoft Word 2019, and the word count function was applied to include all text, including the caption, headings, footnotes and quotations. This document contains 5268 words. I further certify that generative artificial intelligence was not utilized in the preparation of this brief.

/s/ *David J. Grauman*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of May, 2026, I filed the foregoing **BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which is to send notification of such filing to all attorneys of record and pro se litigants registered with CM/ECF system. Additionally, a copy was emailed to the Plaintiff at the address listed below:

Jeromy Wilson
4213 Corby Street
Omaha, NE 68111
Ph.: 402.415.9016
Email: djjiik2015@gmail.com

/s/ *David J. Grauman*